## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BRET R. KELLY, COREY FOSTER, APRIL SMITH**, and **MICHIGAN NURSES ASSOCIATION**,

      Plaintiffs,

v.

**THE UNIVERSITY OF MICHIGAN, MICHAEL J. BEHM**, in his official and individual capacity as University of Michigan Regent, **MARK J. BERNSTEIN**, in his official and individual capacity as University of Michigan Regent, **SHAUNA RYDER DIGGS**, in her official and individual capacity as University of Michigan Regent, **DENISE ILITCH**, in her official and individual capacity as University of Michigan Regent, **ANDREA FISCHER NEWMAN**, in her official and individual capacity as University of Michigan Regent, **ANDREW C. RICHNER**, in his official and individual capacity as University of Michigan Regent, **RON WEISER**, in his official and individual capacity as University of Michigan Regent, **KATHERINE E. WHITE**, in her official and individual capacity as University of Michigan Regent, **MICHELLE SULLIVAN**, in her official individual capacity as Director of Labor Relations, and **JESUS CEPERO**, in his official and individual capacity as Chief Nursing Officer, jointly and severally,

      Defendants.

Case No. _____

_____/

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs Bret R. Kelly, Corey Foster, April Smith, and Michigan Nurses Association ("MNA"), through their attorneys, Sachs Waldman, P.C., state as follows:

## INTRODUCTION

1.      Defendants the University of Michigan, Regents of the University of Michigan, Michelle Sullivan, and Jesus Cepero, in concert with each other, have applied a Policy prohibiting "political apparel and gear" to prohibit nurses at the University of Michigan Health System from wearing apparel displaying messages in support of their union during contentious contract negotiations -- including clearly non-political messages such as "Nurses for the good of Nurses and patients."   Yet Defendants have permitted nurses to wear apparel with partisan social or political messages. In applying a vague and discriminatory apparel policy, the Defendants have violated, and continue to violate, Plaintiffs' and other MNA-represented nurses' freedom of speech and association under the First and Fourteenth Amendments to the United States Constitution.   Defendants also are violating the nurses' rights under the Due Process and Equal Protect clauses as applied under the Fourteenth Amendment. Plaintiffs seek, among other things, a declaration that Defendants' actions are unconstitutional, an injunction compelling defendants to permit Plaintiffs to wear apparel and gear displaying pro-union message, damages, and attorneys' fees.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Bret R. Kelly is a Registered Nurse employed by the University of Michigan Health System and assigned to Unit 5C in University Hospital, and is a resident of Washtenaw County, in the State of Michigan.

3.      Plaintiff Corey Foster is a Registered Nurse employed by the University of Michigan Health System and assigned to Unit 8B in University Hospital, and is a resident of Oakland County, in the State of Michigan.

4.      Plaintiff April Smith is a Registered Nurse employed by the University of Michigan Health System and assigned to Unit 7C in University Hospital, and is a resident of Monroe County, in the State of Michigan.

5.      Plaintiff Michigan Nurses Association ("MNA") is a labor organization and is the certified exclusive bargaining representative of certain nurses employed by the University of Michigan.  MNA's principal office is located in Ingham County, in the State of Michigan.

6.      Defendant University of Michigan ("University") is a public university organized under the laws of the State of Michigan and is a political subdivision of the State of Michigan.  The University is located in Ann Arbor, Michigan, within Washtenaw County, Michigan, in the Eastern District of Michigan.

7.     Defendants Michael J. Behm, Mark J. Bernstein, Shauna Ryder Diggs, Denise Ilitch, Andrea Fischer Newman, Andrew C. Richner, Ron Weiser, and Katherine E. White comprise the Regents of the University of Michigan (collectively the "Regents"), a duly elected body entrusted with general supervision of the University of Michigan pursuant to Michigan Constitution, Const. 1963, art. VIII, §5.  The Regents conduct their business in Ann Arbor, Michigan, within Washtenaw County and the Eastern District of Michigan.

8.     Defendant Michelle Sullivan is, and was at all material times, the Director of Labor Relations for the University of Michigan Health System, whose office is located in Ann Arbor, Michigan, within Washtenaw County, in the Eastern District of Michigan.

9.     Defendant Jesus Cepero is, and was at all material times, the Chief Nursing Officer for Children's and Women's Services at the University of Michigan Health System, whose office is located in Ann Arbor, Michigan, within Washtenaw County, in the Eastern District of Michigan.

10.    Plaintiffs bring this action pursuant to the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §§1983 and 1988.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331, 1343, and 2201.

11.     Venue is properly laid in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b) and Local Rule 83.10.

## FACTUAL ALLEGATIONS

**Bargaining History at Michigan Medicine**

12.     Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference paragraphs 1-11 as if fully set forth, paragraph by paragraph.

13.     Plaintiff MNA has a local affiliate named the University of Michigan Professional Nurse Council ("UMPNC").

14.     Plaintiff MNA, together with the UMPNC, is the certified exclusive bargaining representative for "[a]ll full-time and regular part-time and per diem registered professional nurses employed by the University of Michigan at all facilities," with certain exceptions.

15.     Plaintiff MNA, UMPNC, and Defendants Regents were parties to a collective bargaining agreement ("CBA") which expired on June 30, 2018.

16.     The parties began bargaining for a successor CBA on or about January 22, 2018.  Despite holding a number of bargaining sessions since, the parties were unable to reach an agreement on the successor CBA prior to the June 30, 2018 expiration date.

17.     Plaintiffs and other MNA-represented nurses held an informational picket on June 26, 2018 and again on July 14, 2018.  A newsletter published by

Plaintiff MNA identified the Regents' proposal to cut nurses' retirement benefits and make other economic changes that are detrimental to recruitment and retention of nurses at the University and the Defendants' refusal to disclose staffing information which would assist the MNA and UMPNC in addressing adequate staffing and resulting patient safety issues as among the unresolved concerns.

18.     In an article dated July 14, 2018, *The Michigan Daily*, the University's official publication, reported that the nurses were "bargaining for a new contract [that] would look out for the patients by implementing safer staffing practices."

19.     The parties are continuing to engage in bargaining for a successor agreement.

**The Defendants' Dress and Appearance Policy Prior to 2018**

20.     Defendant University's Dress and Appearance policy, UMHHC Policy 04-06-008 ("Policy"), states in relevant part:

> UMHCC staff may not wear political apparel and gear at any time that they are involved with working with our patients and patient visitors. Patients and visitors may feel uncomfortable with or intimidated by staff who are wearing anything that supports or opposes a particular political issue. Wearing political apparel might lead our patients and visitors to believe that UMHHC endorses, or uses its resources, to support or oppose a particular campaign or political issue that the employee is individually supporting or opposing.

A copy of the Policy is attached hereto as Exhibit 1.

6

21.     The Policy further provides that "compliance with the specific dress and appearance standard shall be a condition of employment" and subjects employees to discipline for failing to comply with the Policy. (Exhibit 1)

22.     Upon information and belief, each unit within Michigan Medicine at the University publishes its own dress code designed to address the particular needs of the unit.  Consistent with UMHHC Policy 04-06-008, these dress codes uniformly ban political apparel.  For example, the 4C Cardiac/Thoracic Surgery Dress and Appearance Guidelines for All Staff states:

> Tops
>
> * * * * *
>
> - Small unit logos or appropriate commercial logos on left upper chest only (i.e. no bedazzled or glittered embellishment, no brands such as Victoria's Secret, PINK or businesses such as bars/taverns.) **No political apparel.**  Unit supplied t-shirts are approved.

23.     Before May 2018, nurses regularly wore apparel expressing support for their union, such as: red t-shirts with the wording "UMPNC, an affiliate of MI NURSES Association" ("UMPNC shirt"), red t-shirts from the 2011 contract negotiations with a block M and a phrase "Nurses Make The Difference at Michigan. UMPNC" ("2011 shirt"), without any censorship or any other repercussions from the Defendants.  Photographs of the red UMPNC shirt and the 2011 shirt are attached hereto as Exhibit 2.

24.     Prior to 2018, the University did not censor, punish, or otherwise direct the MNA-represented nurses to remove any red apparel – the color of the MNA – while working in patient care areas, regardless of the message printed on the apparel.

25.     In addition, MNA-represented nurses at the University have worn other apparel that displayed support for, or opposition to, partisan political and social issues while working in patient care areas without any direction from the Defendants to remove, conceal, or otherwise refrain from wearing, such apparel and gear.

**Defendants' Inconsistent and Changing Censorship of Pro-Union Messages**

26.     As the parties began to negotiate a successor CBA in January 2018, MNA-represented nurses continued to wear the red UMPNC t-shirts (Exhibit 2) while working in patient care areas to show their support for the MNA and the UMPNC.

27.     At the start of negotiations, or anytime thereafter, Defendants did not inform Plaintiffs or other MNA-represented nurses that the red UMPNC t-shirt was in violation of the Policy.

28.     In or about February 2018, as the negotiations became contentious, many MNA-represented nurses, including Plaintiffs Kelly, Foster, and Smith, began wearing a red t-shirt with the wording "United We Stand" on the front and

an image of gripping hands with "#NURSESSTRONG #MNA #UMPNC" printed on the back to show their support for, and in solidarity with, their union. ("'United We Stand' t-shirt").  Photographs of the red "United We Stand" t-shirt are attached hereto as Exhibit 3.

29.    Upon information and belief, Defendants did not, at any time, inform Plaintiffs and other MNA-represented nurses that the red "United We Stand" t-shirt was in violation of the Policy, nor have they instructed MNA-represented nurses to refrain from wearing the red "United We Stand" t-shirt while interacting with patients and patient visitors.

30.    In May 2018, Plaintiff Bret Kelly designed a new red t-shirt for MNA-represented nurses to wear during working hours, including in patient care areas, to show their support for the union and to advocate for a fair contract.  The red t-shirt had a block "M" emblem with the word "nurses" running across it, and a message below the block M that read "Fighting for a Fair Contract for the good of nurses and patients." ("Block-M shirts").  A photograph of the Block-M shirt designed and distributed by Plaintiff Kelly is attached hereto as Exhibit 4.

31.    On or about May 2, 2018, before Plaintiff Kelly began distributing the red Block-M shirts, Defendant Michelle Sullivan informed the MNA's Labor Relations Representative Ben Curl that the University would not permit the MNA-represented nurses to wear the red block-M shirts because it contained

"inappropriate" messaging for patient care areas, and because it was in violation of the University's "solicitation" policy.  Defendant Sullivan advised Representative Curl that MNA-represented nurses would be permitted to continue wearing the UMPNC shirts.

32.    Plaintiff Kelly began distributing the block-M shirts to MNA-represented nurses on or about May 9, 2018; almost immediately, many MNA-represented nurses began wearing the red block-M shirts in patient care areas.

33.    During May and June 2018, many nurses were told by their managers and/or supervisors to remove their red block-M t-shirt and change into other clothing or to turn the t-shirt inside-out so that the messaging was not visible, or to cover up the front of the shirt.

34.    Supervisors and managers who instructed the nurses to obscure their red block-M shirts gave varying explanations including, but not limited to:

      a.    the red block-M shirt was not approved under the University's dress code;

      b.    the red block-M shirt was inappropriate or that it contained an inappropriate slogan;

      c.    the red block-M shirt was considered "non-neutral;"

      d.    the red block-M shirt placed patients in the predicament of having to choose between the hospital and the union;

e.    people had strong feelings about the shirts because they displayed a political statement;

f.    the word "fighting" on the red block-M shirts was a problem;

g.    the "M" used on the red block-M shirts was a misuse of the University's logo.

35.    In June 2018, Plaintiff Kelly redesigned the shirt in response to the Defendants' objections. The redesigned red shirt had a block "N" instead of the block "M," with the word "Nurses" running through it, and blocked out the words – "Fighting" and "a Fair Contract" – with a new message: "Nurses for the good of Nurses and patients." ("block-N shirts"). A photograph of the red block-N shirt design is attached hereto as Exhibit 5.

36.    Once again, many nurses were told by their supervisors to remove their red block-N t-shirt or face punishment.

37.    Plaintiff Foster was told by her supervisor that the new block-N shirt was inappropriate because it could be construed as advocating for a cause, soliciting for support, or it could be seen as conveying a non-neutral message.

38.    Supervisors and managers who instructed the nurses to remove or obscure their red block-N shirts gave varying explanations including, but not limited to:

a. The new block-N shirt was unprofessional looking because of the blocked words, and because the slogan contained the word "patient;"

b. The shirt did not contain a neutral message;

c. Patients do not need to know that the nurses are fighting for a fair contract;

d. The shirt solicits support for contract negotiations;

e. The shirt will cause patients to ask what the blocked out words said or will make patients anxious;

f. The new block-N shirt was on a list of banned t-shirts prepared and disseminated by Defendant Jesus Cepero.

39. On June 26, 2018, Defendant Michelle Sullivan issued a memorandum to the University Michigan Police Department, Michigan Medicine Security, and University & Michigan Medicine Communications regarding the MNA and UMPNC's scheduled informational picketing on June 27, 2018. The memorandum stated in pertinent part: "Supervisors should note instances of participants returning to patient care areas in red t-shirts or other articles of clothing with non-neutral messaging, and handle appropriately as violations of dress code." A copy of the memorandum is attached hereto as Exhibit 6.

40. Upon information and belief, while some MNA-represented nurses were instructed to remove or conceal of their red block-M and/or block-N t-shirts,

other MNA-represented nurses continued to wear the N t-shirts in patient care areas, in full view of their supervisors and managers, without incident.

41.    Since January 2018, MNA-represented nurses have worn buttons and badge-pulls with the message, "United We Bargain. UMPNC. MI NURSES" in patient care areas.   While some nurses were instructed to remove the button because it was in violation of the University's dress code, other nurses continued to wear the button without incident while interacting with patients and visitors.   A photograph of the "United We Bargain" button is attached hereto as Exhibit 7.

42.    Plaintiff Kelly and other MNA-represented nurses have worn other apparel and gear bearing a pro-union message without any direction from the Defendants to remove them.   For example, Plaintiff Kelly wore a red block-M t-shirt with the word "Labor" written through the block M and a message on the back that read "The University Works Because We Do!" with the insignias of various labor organizations.   Another MNA-represented nurse wore a green UMPNC Strike t-shirt from 1989, with the image of a picket sign reading "We Won't Back Down!" and the phrase "1989 U of M Nurses' Strike." Neither nurse was told to remove the apparel or conceal the pro-union message.

43.    At the same time that Defendants prohibited MNA-represented nurses from wearing red t-shirts bearing pro-union messages, occasionally citing to the Policy's ban on political messaging in patient care areas, Defendants did not

enforce the same ban as to other apparel and gear that displayed partisan political messages and advocated for certain social causes, including:

      a.    a "Black Lives Matter" bracelet and a pin;

      b.    a Rainbow button with a word "Ally," showing support for the LBGTQ community;

      c.    a t-shirt with a phrase "End Domestic Violence. #Enough," and a word "Survivor;"

      d.    a button with a phrase "I Believe Survivors," showing support for the victims of domestic violence;

      e.    an ACLU's "Dissent is Patriotic" t-shirt;

      f.    a t-shirt with a phrase "Katie Scott for County Commissioner";

      g.    a t-shirt with a phrase "Nevertheless She Persisted," showing support for Senator Elizabeth Warren and progressive female legislators; and

      h.    a "Black Power" t-shirt, depicting a comb running through hair.

44.    In August 2018, in response to Defendants' inconsistent explanations for their asserted objections to the red block-M and block-N t-shirts, the nurses redesigned the red t-shirt once again.  The re-designed red shirt displayed a block-N with a word "Nurses" running across it, and below it the phrase, "#UMPNCstrong  #MNA  #NURSESMAKETHEDIFFERENCE."  Defendants have not instructed any MNA-represented nurses to remove or conceal the revised

version of the block-N shirt.  A photograph of the revised red block-N t-shirt is attached hereto as Exhibit 8.

45.     In addition, Plaintiffs designed and distributed red t-shirts and buttons with a phrase "Where's the Graham Crackers?" to express their protest against the University's decision to stop offering graham crackers for patients and patient visitors throughout the facility, a decision that purportedly was intended to save money for the University,  Nurses derided because it would save very little money and would remove a small comfort for patients with sodium restrictions and for children who prefer graham crackers.  In early August 2018, MNA-represented nurses received a pager message instructing them to remove apparel and gear with "Where's the Graham Crackers?" message because it wasn't "neutral."

46.     On Tuesday, September 4, 2018, MNA and UMPNC announced that the union would be taking a membership vote to authorize a job action to protest the University's unfair labor practice including its refusal to negotiate in good faith during the week of September 10, 2018.

47.     On Wednesday, September 5, 2018, the University's Clinical Nursing Director Mary LaBeske sent an e-mail to all nurses in the Surgical Intensive Care Unit, advising that the nurses were not permitted to wear any red shirts bearing "a block M with language regarding fair contract or patient safety."

48.     At that time, some nurses were told, for the first time, that they were no longer permitted to wear the red t-shirts with a block N and redacted message (Exhibit 5) despite having worn the redesigned block-N t-shirt for nearly three months without incident.

## COUNT I
### Violation of the First Amendment and 42 USC § 1983

49.     Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference paragraphs 1-48 as if fully set forth, paragraph by paragraph.

50.     In wearing the apparel with pro-union messages described above, Plaintiffs Kelly, Foster, and Smith, together with other MNA-represented nurses, were expressing their views in their personal capacities as citizens.

51.     The message displayed on the prohibited apparel involves matters of public concern, i.e., the highly publicized dispute contract between the MNA/ UMPNC and the University, the retention and recruitment of qualified nurses, safe working conditions for nurses, ensuring patient safety, and nurses' ability to contribute directly to discussions of their working conditions, all of which relate to the quality of patient care.

52.     Defendants have discriminatorily applied the Policy by banning only the red apparel and gear that displayed pro-union and pro-patient messages, i.e., the block-M and block-N t-shirts with references to a fair contract for the good of

nurses and patients, "United We Bargain" button, and "Where's the Graham Crackers?" – while other "political" messages were not censored.

53.      Defendants' Policy is vague and overly broad, as it provides no discernible direction or guidance to Plaintiffs and other MNA-represented nurses as to which apparel and gear complies with the Policy and which do not.

54.      Defendants' Policy, on its face, is unconstitutional, in violation of Plaintiffs' free speech and associational rights under the First and Fourteenth to the Amendments United States Constitution.

55.      Defendants have applied the Policy discriminatorily to restrict and suppress certain disfavored speech based on content and viewpoint.

56.      Defendants' Policy, as applied, lacks adequate justification and is unconstitutional, in violation of Plaintiffs' free speech and associational rights under the First and Fourteenth Amendments to the United States Constitution.

57.      The Policy also is void for vagueness because the classification of speech as "political" does not clearly distinguish between permitted and prohibited for content and thereby allows subjective and content-based application.

## COUNT II
### Violation of the Equal Protection Clause of the Fourteenth Amendment

58.      Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference paragraphs 1-57 as if fully set forth, paragraph by paragraph.

59.     There is no rational basis for the Defendants' selective and discriminatory application of the Policy in banning certain red t-shirts and buttons displaying pro-union and pro-patient messages, while other political and social messages have not been censored.

60.     Defendants' selective and discriminatory application and enforcement of the Policy violates the Equal Protection Clause of the Fourteenth Amendment.

## COUNT III
### Violation of Due Process under the Fourteenth Amendment

61.     Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference paragraphs 1-60 as if fully set forth, paragraph by paragraph.

62.     The Policy is unconstitutionally vague on its face in violation of the Fourteenth Amendment.   (See Exhibit 1)   The Policy fails to define with any specificity what constitutes forbidden "political" speech.

63.     Further, Defendants have applied the policy in a selective, discriminatory, and unconstitutional manner by permitting some forms of political speech yet banning others – specifically, and only recently, banning the t-shirts and buttons which display pro-union and pro-patient messages.  Defendants have done so without any discernible rationale or explanation that would allow nurses to regulate their actions to avoid punishment under the Policy.

64.     Defendants' promulgation of the facially vague policy and their discriminatory enforcement of the policy, each and together, violate the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Issue a declaratory judgment to the effect that Defendants violated Plaintiffs' First Amendment rights to free speech and association, as well Plaintiff's  right to equal protection and due process by enforcing a vague and overbroad policy, and prohibiting only certain apparel and gear based on the content of the messages displayed;

B.     Issue a preliminary injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from applying and enforcing the Policy to prohibit Plaintiffs and MNA-represented nurses from wearing apparel and gear displaying pro-union and pro-patient messages;

C.     Issue a permanent injunction as set forth above in (B);

D.     Order that Defendants pay nominal damages to Plaintiffs;

E.     Order that Defendants pay Plaintiffs' costs and attorneys' fees pursuant to 42 U.S.C. §1988; and

F.      Grant such other relief that the Court deems just and equitable.

Respectfully submitted,

SACHS WALDMAN, P.C.

*/s/ Andrew Nickelhoff*
Andrew Nickelhoff (P37990)
Marshall J. Widick (P53942)
Mami Kato (P74237)
*Attorneys for Plaintiffs*
2211 East Jefferson Avenue, Ste. 200
Detroit, Michigan 48207
Tel: (313) 496-9429
E-mail: anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
mkato@sachswaldman.com

Dated: September 11, 2018

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this matter.

SACHS WALDMAN, P.C.

*/s/ Andrew Nickelhoff*
Andrew Nickelhoff (P37990)
Marshall J. Widick (P53942)
Mami Kato (P74237)
*Attorneys for Plaintiffs*
2211 East Jefferson Avenue, Ste. 200
Detroit, Michigan 48207
Tel: (313) 496-9429
E-mail: anickelhoff@sachswaldman.com
mwidick@sachswaldman.com
mkato@sachswaldman.com

Dated: September 11, 2018